UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY PERDUE,

        Plaintiff,                                Case No. 07-10076

vs.                                            DISTRICT JUDGE PAUL V. GADOLA
                                                      MAGISTRATE JUDGE STEVEN D. PEPE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
=========================/

## REPORT AND RECOMMENDATION

**I.    BACKGROUND**

Timothy Perdue brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision that Plaintiff was entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act as of February 24, 2006, but not earlier. Both parties have filed motions for summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    **A.**    **Procedural History**

In October 2003, Plaintiff applied for DIB alleging disability since January 2001 due to cardiomyopathy (R. 55, 69).[1] After Plaintiff's claim was denied upon initial review on January

---

[1] Plaintiff had previously applied for disability insurance benefits. This application was denied by ALJ Daniel G. Berk following a hearing in a decision dated January 23, 2003, which

1

12, 2004 (R. 44-48), an administrative hearing was held on October 21, 2005, at which Plaintiff was represented by current attorney, Barry Keller (R. 314). Vocational Expert (VE) Elizabeth Pasikowski also testified. On June 16, 2006, Administrative Law Judge (ALJ) Karen Goheen decided Plaintiff was disabled as of February 24, 2006, but not before because, despite his impairments, he could perform a limited but significant number of sedentary-level jobs identified by the vocational expert (R. 14-23). This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (R. 4-6).

B. **Background Facts**[2]

1. *Plaintiff's Testimony and Statements*

Plaintiff was 44 years old at the time of his January 2001 alleged onset of disability (R. 55, 319). He turned fifty in November 2006; yet the ALJ considered him to have been the equivalent of fifty years old nine months earlier on February 24, 2006 (R. 22). Plaintiff has a high school education and completed some college course work (R. 22, 321). He worked in the past as a machine operator for General Motors from 1978 to 2001, and was in the United States Air Force from 1983 to 2002 (four years active duty and nine years in the reserves) (R. 70, 323). Plaintiff testified that he was no longer able to work due to fatigue resulting from cardiomyopathy (R. 69, 328-29).

Plaintiff is a recovering alcoholic who continues to participate in AA. He has remained sober for the past four and a half years (R. 331).

---

Plaintiff unsuccessfully appealed to the United States District Court (R. 14, 18). At the hearing before ALJ Goheen, Plaintiff amended his onset date to January 24, 2003, the day after the unfavorable decision was issued.

[2] Plaintiff raises limited arguments in his district court brief, contending that the ALJ erroneously weighed the medical evidence, affording insufficient weight to reports from his treating physician Dr. Chun (Dkt. #12, p. 5). To the extent possible, the facts and argument presented herein are limited to respond to Plaintiff's brief.

2

Plaintiff takes Bumex, a diuretic prescribed by his cardiologist. He testified that the medication requires him to use the bathroom about ten times per morning.

Plaintiff got winded climbing stairs (R. 337). He said his physician recommended that he limit his walking, exercise and driving due to shortness of breath (R. 345). Plaintiff claimed that fatigue would prevent him from performing sedentary work on an ongoing basis, saying that he needed to rest and nap daily (R. 328, 336). He lives alone and cares for his personal and household needs including driving, shopping, cooking, laundry and light cleaning (R. 320, 323, 334-35, 348). He drives to two AA meeting on most days (R. 328-30).

### 2. *Medical Evidence*

The record documents that in 2001 and 2002 Plaintiff was treated for conditions including cardiomyopathy (R. 99-188, 217-91, 294-98). During this period Kenneth K. Chun, M.D., repeatedly described Plaintiff as unable to work (R. 213-14, 223-25, 227). April 2001 testing revealed an ejection fraction of 29% (R. 301). Plaintiff's prior application for disability benefits was denied by ALJ Daniel Berk following a hearing in a decision dated January 23, 2003, because Plaintiff could perform a significant number of unskilled light-level jobs that permitted him to alternate between sitting and standing (R. 18, 356-363).

In February 2003, Plaintiff sought treatment for dizziness (R. 191-94). In June 2003, Plaintiff complained of extreme shortness of breath and Dr. Chun reported that a "previous MUGA scan showed ejection fraction near 20%" (R. 205). In August 2003, Plaintiff underwent cardiac examination that yielded normal results (R. 197-204).

On January 7, 2004, the state agency found that Plaintiff was capable of performing sedentary work lifting 10 pounds occasionally and 5 pounds frequently with occasional postural limitations and no environmental limitations (R. 91-98). The agency opinion made no mention

of the January 23, 2003, decision in this matter, and there is no indication that the prior decision was taken into consideration as required by the applicable case law. *See, Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990); *Drummond v. Commissioner*, 126 F.3d 387 (6th Cir. 1997).

An echocardiogram performed in March 2004 revealed an estimated ejection fraction of 20-25% (R. 299). In April and July 2004 Dr. Chun described Plaintiff as having "less than 20% ejection fraction" (R. 305-06). In a September 2004 letter, Dr. Chun described Plaintiff as disabled and reported that testing had shown him to have an ejection fraction less than 15% (R. 300). Dr. Chun repeated this 15% figure in January 2005 (R. 309). September 2005 testing yielded an ejection fraction of approximately 25% with moderate to severe ventricular enlargement and moderately severe LV systolic (R. 302). Dr. Chun again opined that Plaintiff was totally disabled (R. 313).

### 3. *Vocational Evidence*

VE Pasikowski testified that Plaintiff's past work as a line worker at General Motors was unskilled and heavy (R. 351). His work in the Air Force as a service specialist was medium and semiskilled. Plaintiff's Air Force training was not transferable.

The ALJ asked VE Pasikowski whether an individual of Plaintiff's age, education, and work experience could perform any jobs if that individual was limited to lifting no more than 10 pounds occasionally, five frequently, involving primarily seated work, only occasional time on his feet, to avoid postural activities, work that would allow rest room breaks - as needed, and no work around unprotected heights and dangerous machinery (R. 352). VE Pasikowski testified that in Southeast Michigan such an individual could perform 1,400 information clerk jobs, 1,500

ID clerk jobs, 1,500 visual surveillance monitor jobs, and 2,000 visual inspector jobs, all of which were unskilled and sedentary (R. 352-353).

ALJ Goheen then asked VE Pasikowski whether an individual of Plaintiff's age, education, and work experience could perform any jobs assuming Plaintiff's testimony at the hearing (R. 353). VE Pasikowski indicated that such an assumption would preclude employment (R. 353-354). The VE stated that Plaintiff was vocationally limited due to his fatigue and need to sit down with his feet elevated.

Plaintiff's attorney then asked VE Pasikowski what effect the need to use the rest room at least two times an hour for the first four and a half to five hours of the day would have on the identified jobs (R. 354). VE Pasikowski responded that such a restriction would prevent substantial gainful employment.

### 4. *ALJ Goheen's Decision*

ALJ Goheen found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, and that he had not engaged in substantial gainful activity relevant to her decision (R. 16). She found that Plaintiff's cardiomyopathy was a "severe" impairment within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 16-17).

Plaintiff had the RFC to perform unskilled sedentary work with the following limitations: lifting 10 pounds occasionally and 5 pounds frequently; primarily seated work; only occasional time on his feet; avoidance of postural activities; avoidance of close proximity to unprotected heights and dangerous machinery and; the need for unscheduled restroom breaks (R. 18). ALJ Goheen noted that she considered ALJ Berk's January 23, 2003, decision as the first factor in

5

arriving at the aforementioned RFC as required by the applicable case law. The residual functional capacity determined by way of the prior decision in this matter, which was affirmed on subsequent appeal to the district court, was that Plaintiff was capable of performing "the exertional and non-exertional requirements of unskilled light work offering a sit/stand option." Yet, there was also new and material evidence submitted which ALJ Goheen believed justified the finding of a lesser exertional capacity.

The ALJ gave considerable weight to Plaintiff's testimony in arriving at her decision. She noted that although Plaintiff's activities appear to remain at the same level as they did prior to the hearing in this matter, he testified that he feels worse. Specifically, Plaintiff got winded climbing stair, did less driving, and participated less in the set-up of AA meetings. Plaintiff also testified that his physician limited his walking, exercise and driving due to his shortness of breath (R. 19). When asked if he could perform sedentary bench work for 6 ½ hours a day, Plaintiff responded that he could not due to fatigue. Plaintiff also estimated that he gets fatigued 2 to 3 times per week and needs to rest. He took daily naps which lasted from 30 to 45 minutes. There was no medical indication, however, that his nap needed to be mid-day, and the ALJ determined from the record and testimony that it would appear Plaintiff could rest on his lunch break.

The ALJ also addressed the issue of Plaintiff's alcoholism (R. 19). She noted that although the record indicates over a 20 year history of drinking a pint plus 3 to 4 beers per day, Plaintiff testified at the hearing that he had 4 ½ years of sobriety and that he still attends 2 AA meetings a day. In addition, although records from June 24, 2003, note that Plaintiff was in alcohol rehabilitation, thus calling his exact length of sobriety into question, medical records confirmed continued sobriety by way of random drug/alcohol testing results and comments made

by Plaintiff to his physician in the his progress notes. ALJ Goheen concluded that alcohol abuse was not a contributing factor material to the determination of disability.

Nonetheless, ALJ Goheen also discredited Plaintiff's subjective testimony regarding his complaints. While Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, ALJ Goheen found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. ALJ Goheen noted that Plaintiff's daily activities forms indicated that he lived alone and did not receive any particular help in maintaining his residence, other than with yard work. Plaintiff also noted that he washed dishes, dusted and did laundry. Furthermore, Plaintiff was able to drive and reported that he could walk a block to a block and a half (R. 20).

ALJ Goheen found Plaintiff was unable to perform past relevant work, but based on the testimony of the VE and the record, she concluded that Plaintiff was capable of performing unskilled sedentary jobs (R. 21). It was not until the ALJ evaluated Plaintiff's age category that she determined that Plaintiff's residual functional capacity yielded a finding of disabled. Plaintiff was born on November 24, 1956, and was 49 years old on the alleged onset date, which is defined as a younger individual. 20 C.F.R. 404.1563. Plaintiff attained the age of 50 on November 24, 2006. 20 C.F.R. 404.1563(b) states that age categories should not be applied mechanically to a borderline situation. The ALJ gave the Plaintiff the "benefit of the doubt" and found that he "attained" the age of 50 by February 24, 2006, 9 months prior to his 50th birthday (R. 22). ALJ Goheen then concluded that beginning on February 24, 2006, there was not a significant number of jobs in the national economy that the Plaintiff could perform. Accordingly, ALJ Goheen held that Plaintiff was not disabled prior to February 24, 2006, but

7

became disabled on that date and continued to be disabled through the date of her decision (R. 23).

In determining Plaintiff's onset date of disability, ALJ Goheen questioned the credibility of Dr. Chun's opinions. The ALJ noted that Dr. Chun's most recent treatment notes indicated that Plaintiff had an ejection fraction ranging from less than 15% to 25%, but that these estimates do not correlate with the actual testing reports contained in the file (R. 17). In fact, on April 26, 2005, Dr. Chun indicated that the ejection fraction of less than 20% was based on his last echocardiogram performed on March 30, 2004. The lesser ejection fractions noted in his progress notes were all after the March test which noted an ejection fraction of 20% to 25%, although low, not less than 15% as reported in progress notes and Dr. Chun's opinion letters. The next test result, dated September 13, 2005, estimated an ejection fraction around 25%. The ALJ concluded that all ejection fractions of less than 20% were reported in progress notes and appear to be a mistaken recollection on the part of Plaintiff's treating physician as actual test results were higher.

The ALJ also concluded that the basis for Dr. Chun's opinions may be the subjective reporting of Plaintiff as to his physical limitations and ejection fractions readings of 25% or less evidencing moderately severe left ventricular systolic impairment (R. 20). ALJ Goheen noted that a number of times Dr. Chun specifically referred to the fact that Plaintiff has applied for and/or been denied Social Security and noted that he was ordering tests to substantiate or justify disability.

Yet, as outlined in Judge Berk's January 23, 2003, decision and paragraph 4 of ALJ Goheen's decision (R. 17), ejection fractions alone are not determinative of disability. Meeting the listing requirement requires more than establishing an ejection fraction of less than 30%.

Effective April 13, 2006, the cardiac listing changed such that in order to meet the listing the requirements of subparagraph A <u>and</u> B must be met. In order to meet listing 4.02A, there must be an inability to carry out <u>any</u> physical activity <u>and</u> symptoms of inadequate cardiac output, pulmonary congestion or anginal syndrome at rest. Although Plaintiff reported the inability to carry out virtually any activity, as discussed above, his daily activities belie this allegation. Moreover, examination notes by Dr. Chun indicate normal cardiac exams, with clear lungs and no organomegaly or edema. The record also does not disclose any anginal symptoms and Plaintiff has denied experiencing any chest pain (*See*, Ex. 8F & 14F).

Listing 4.02B also requires cardiac enlargement which can be manifested by an ejection fraction of 30% or less. Additionally, however, there must also exist an inability to perform on an exercise test at a workload equivalent to 5 MET's or less due to symptoms of chronic heart failure. There is no indication that Plaintiff would have any difficulty performing such a test and it does not appear that one has been performed within the time period relevant to the ALJ's decision.

## II. ANALYSIS

### A. Standards of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are

not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform. *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

B. **Factual Analysis**

Plaintiff advances only a skeletal argument in his district court brief. He contends the ALJ erred in weighing the medical evidence of record, and concluding that Plaintiff's treating physician failed to provide evidence supporting his claim of disability (Dkt. #12, p. 5). Plaintiff claims that his treating physician provided such evidence in the form of ejection testing
10

described in letters dated September 2004 and September 2005.[3] *Id*. Plaintiff further contends the ALJ erred in the weight he afforded the opinion of treating physician Dr. Chun. *Id*.

Plaintiff does not identify evidence that his condition worsened since January 2003, at which time his prior claim was denied, establishing that he was not disabled as a matter of law. Nor does he identify specific symptoms or functional limitations that would prevent him from performing sedentary work prior to February 2006. Instead, he simply contends that the ALJ erred by not accepting his treating physician's opinion that he was disabled.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20

---

[3] Plaintiff actually states in his brief that the letters were dated September 2005 and **September 2006**. From a review of the record, however, it appears that Plaintiff meant to refer to letters dated September 2004 and **September 2005** (R. 300, 313).

C.F.R. §404.1527. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p.

Yet, the conclusion of whether a claimant is "disabled" is a decision reserved to the Commissioner to decide (R. 19). 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2). And, "[w]e will not give any special significance to the source of an opinion on an issue reserved to the Commissioner." *Id*. at §§ 404.1527(e)(3), 416.927(e)(3). Here, the ALJ expressly addressed Dr. Chun's opinions, and set forth her reasons for the weight she afforded those opinions (R. 20-21). The ALJ reasonably noted that Dr. Chun's treatment and examination records did not contain objective clinical and laboratory documentation of a medical condition that could reasonably be expected to result in disabling symptoms and limitations. Lacking such findings, it was reasonable for the ALJ to observe that Dr. Chun's conclusory opinions appeared to be based primarily upon Plaintiff's subjective allegations, which the ALJ found not fully credible (R. 20). *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). The ALJ further noted that when asked at the hearing, Plaintiff testified that Dr. Chun had limited him only from driving, walking and exercising (R. 21). Accordingly, the ALJ's reasonable weighing of this evidence should not be disturbed upon judicial review.

In his brief, Plaintiff very briefly refers to Section 4.02B of the Listing of Impairments, and Dr. Chun's statements as to his "ejection fractions." See (Dkt. #12, p. 5); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 4.02B. Although a reduced ejection fraction is one of the many factors required to satisfy Listing 4.02B, Plaintiff has failed to advance any credible argument that he satisfies the requirements of that or any other listed impairment. In any event, the ALJ expressly

set forth his reasons for finding that Plaintiff did not meet or equal any listed impairment including Listing 4.02B (R. 17). As the ALJ observed, a reduced ejection faction alone is insufficient to satisfy listing 4.02B, and Plaintiff failed to provide evidence on the remaining requirements of that Listing.

A claimant whose impairment meets a listed impairment will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In order to meet a listing, however, a claimant must meet every element of the listing, not just the diagnosis. 20 C.F.R. §§ 404.1525(d), 416.925(d); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify."). And, Plaintiff bore the burden of proving that her impairments met or medically equaled a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff argues that because his physician reported in his letters of September 2004, and September 2005, that the Plaintiff's ejection levels were less than 30%, a finding of disabled is required before February 24, 2006. Yet, Meeting the listing requirement requires more than establishing an ejection fraction of less than 30%. Effective April 13, 2006, the cardiac listing changed such that in order to meet the listing the requirements of subparagraph A <u>and</u> B must be met. In order to meet listing 4.02A, there must be an inability to carry out <u>any</u> physical activity <u>and</u> symptoms of inadequate cardiac output, pulmonary congestion or anginal syndrome at rest. As the ALJ noted, although Plaintiff reported the inability to carry out virtually any activity, his daily activities belie this allegation. Moreover, examination notes by Dr. Chun indicate normal cardiac exams, with clear lungs and no organomegaly or edema. The record also does not disclose any anginal symptoms.

Listing 4.02B requires cardiac enlargement which can be manifested by an ejection fraction of 30% or less. Additionally, however, there must also exist an inability to perform on an exercise test at a workload equivalent to 5 MET's or less due to symptoms of chronic heart failure. As the ALJ noted, there is no indication that Plaintiff would have any difficulty performing such a test and it does not appear that one has been performed within the time period relevant to the ALJ's decision. Accordingly, the ALJ's decision is supported by substantial evidence in the record, and should be affirmed.

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 28, 2008                           s/ Steven D. Pepe
Ann Arbor, MI                                       United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 28, 2008.

                                            s/ Alissa Greer
                                            Case Manager to Magistrate
                                            Judge Steven D. Pepe
                                            (734) 741-2298